IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Juan T.S.[1],<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil No. 24-1215 (GLS) |

**OPINION AND ORDER**

Plaintiff seeks review of the Commissioner of the Social Security Administration's (the "SSA") denial of his application for Social Security Disability Insurance benefits ("SSDI"). Docket Nos. 1, 10. Plaintiff sustains that the decision should be reversed because it was not supported by substantial evidence and was based on incorrect legal standards. Docket No. 10. The Commissioner opposed. Docket No. 15. The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. §636(c). Docket No. 4. After careful review of the administrative record and the parties' briefs, the Commissioner's decision denying disability benefits is **AFFIRMED**.

## I.    Procedural Background

Plaintiff worked as an air conditioner installer until 2018. Tr. 203-04, 487.[2] On March 31, 2020, Plaintiff filed an application for SSDI claiming that, as of November 11, 2019, the following conditions limited his ability to work: cervicalgia, degenerative disc disease of the cervical and lumbar spine, osteoarthrosis, depressive disorder, obesity, rheumatoid arthritis without rheumatoid

---

[1]        Plaintiff's last name is omitted for privacy reasons.

[2]        "Tr." refers to the transcript of the record of proceedings.

factor, and hypothyroidism. Tr. 184-86, 484-84. Plaintiff received treatment from several doctors as evidenced by his disability report. Tr. 483-97. The application was denied initially and upon reconsideration. Tr. 483-511. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and, on May 25, 2022, a hearing was held via telephone before ALJ Hortencia Haaversen. Tr. 200-218. Plaintiff testified and was represented by counsel. Id. Vocational Expert ("VE") Pedro Román testified at the hearing. Id. On November 9, 2022, the ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of November 11, 2019, through June 30, 2020, the last date insured. Tr. 185-92. Plaintiff asked the Appeals Council to review but the request was denied on March 20, 2024, rendering the Commissioner's decision the final decision for review by this Court. Tr. 1-9. On May 13, 2024, Plaintiff initiated this action and both parties filed memoranda in support of their respective positions. Docket Nos. 10, 15.

## II.    Legal Framework

### A.  Disability Determination by the SSA: Five Step Process

The ultimate question to receive benefits under the Social Security Act is whether plaintiff is disabled within the meaning of 42 U.S.C. §423(d). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See id. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." 42 U.S.C. §423(d)(2)(A). The burden of proving disability rests on plaintiff. 42 U.S.C. § 423(d)(5)(A); Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

The Commissioner engages in a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §404.1520; Bowen, 482 U.S. at 140-42. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. 20 C.F.R. §404.1520(b). If not engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c). The step two severity requirement imposes a *de minimis* burden, which is designed to screen out groundless claims. McDonald v. Secretary, 795 F.2d 1118,

1123 (1st Cir. 1986). If the impairment or combination of impairments is severe, the third step applies. The ALJ must determine whether the claimant's severe impairments meet the requirements of a "listed impairment," which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. See 20 C.F.R. §404.1520(d); 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant has a "listed impairment" or an impairment equivalent in severity to a "listed impairment," the claimant is considered disabled. If the claimant's impairment does not meet the severity of a "listed impairment," the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. §404.1520(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations due to impairments. 20 C.F.R. §404.1520(e); §404.1545(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. 20 C.F.R. §404.1520(f); §416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment due to the alleged disability. Santiago v. Secretary, 944 F.2d 1, 5 (1st Cir. 1991). At step five, however, the Commissioner has the burden to prove the existence of other jobs in the national economy that claimant can perform. 20 C.F.R. §404.1520(g); Ortiz v. Secretary of Health & Human Services, 890 F.2d 520, 524 (1st Cir. 1989). If there are none, the claimant is entitled to disability benefits. 20 C.F.R. §404.1520(f).

### B.  Standard of Review

The Court may affirm, modify, reverse, or remand the decision of the Commissioner based on the pleadings and transcript. 42 U.S.C. §405(g). The Court's role is limited to deciding whether the ALJ's decision is supported by substantial evidence in the record and based on a correct legal standard. See id.; Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Manso-Pizarro v. Secretary, 76 F.3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla." It is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). Under the substantial evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient

evidence' to support the agency's factual determinations" and "the threshold for such evidentiary sufficiency is not high". <u>Biestek v. Berryhill</u>, 587 U.S. 97, 103-04 (2019).

A determination of substantiality must be based in the record. <u>Ortiz</u>, 955 F.2d at 769. It is the Commissioner's responsibility to weigh credibility and to draw inferences from the evidence. <u>Rodríguez v. Secretary</u>, 647 F.2d 218, 222 (1st Cir. 1981). Courts will not second guess the Commissioner's resolution of conflicting evidence. <u>Irlanda Ortiz v. Secretary</u>, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings must be upheld if a reasonable mind, viewing the evidence in the record, could accept them as adequate to support his conclusion. <u>Rodríguez</u>, 647 F.2d at 222. And even if there is substantial evidence, which could arguably justify a different conclusion, the Court must uphold the ALJ's decision if supported by substantial evidence. 20 C.F.R. §404.1546(c); <u>Rodríguez Pagán v. Sec'y of Health and Human Servs.</u>, 819 F.2d 1, 3 (1st Cir.1987).

### III.    Discussion

#### A.  The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of November 11, 2019, through his date last insured of June 30, 2020. Tr. 186. At step two, the ALJ determined that Plaintiff had several medically determinable impairments pursuant to 20 C.F.R. §404.1521: cervicalgia, degenerative disc disease of the cervical and lumbar spine, osteoarthrosis, depressive disorder, obesity, rheumatoid arthritis without rheumatoid factor, and hypothyroidism. <u>Id.</u> But the ALJ found that Plaintiff did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for twelve (12) consecutive months, and that Plaintiff did not have a severe impairment or combination of impairments. Tr. 186. In reaching this conclusion, the ALJ considered all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence based on 20 C.F.R. 404.1529 and SSR 16–3p. Tr. 187. The ALJ found that Plaintiff was not disabled. Tr. 192.

#### B.  Plaintiff's Allegations of Error

Plaintiff seeks review of the Commissioner's decision on the following grounds: (1) the substantial evidence does not support the ALJ's conclusion at step two that he did not have a severe

impairment or combination of impairments and (2) the ALJ did not properly assess Plaintiff's subjective complaints. Docket No. 10. The Court finds no error.

### 1. The Evidence Considered by the ALJ at Step-Two

Plaintiff argues that the ALJ erred at step two of the sequential analysis by failing to classify Plaintiff's impairments as severe. Docket No. 10 at p. 12. Plaintiff does not claim that the ALJ used an incorrect legal standard. Instead, Plaintiff contends that the ALJ's determination that he did not have a severe impairment or combination of impairments cannot withstand due to the "overwhelming medical evidence that clearly shows that [his] impairments are severe and have lasted for more than 12 consecutive months." Id. The Commissioner counters that the ALJ's determinations were amply supported by the record. Docket No. 15 at pp. 4-7. I agree.

At step two of the sequential evaluation process, an ALJ must consider the severity of a claimant's impairments and whether those impairments or combination of impairments significantly limit his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); 404.1509. The step two severity test is a *de minimis* screening for the ALJ to weed out groundless claims that would clearly result in a finding of non-disability, even if vocational factors were considered. McDonald v. Sec'y of Health and Human Servs., 795 F.2d 1118, 1125–1126 (1st Cir.1986). The step two analysis is two-fold: (1) whether a claimant has a medically determinable impairment or combination of impairments, and (2) whether the impairments or combination of impairments is severe, that is, that significantly limits or is expected to significantly limit the ability to perform basic work-related activities for twelve consecutive months. López-González v. Comm'r of Soc. Sec., 59 F.Supp.3d 372, 377 (D.P.R. Sept. 19, 2014). See also 20 C.F.R. §§ 404.1520(a)(4)(ii) and 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." Examples of these include –

    (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;

    (2) seeing, hearing, and speaking;

    (3) understanding, carrying out, and remembering simple instructions;

    (4) use of judgment;

    (5) responding appropriately to supervision, co-workers and usual work situations; and

    (6) dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

At steps one through four of the sequential evaluation, Plaintiff has the burden of proving that he cannot return to his former employment because of the alleged disability. López-González, 59 F.Supp.3d at 375. And at step two, Plaintiff has the burden of "establishing that he has a medically severe impairment– one that significantly limits his physical or mental ability to perform basic work activities." Id. at p. 378 (cleaned up). If Plaintiff "does not make a *de minimis* showing that []he has an impairment or combination of impairments severe enough to interfere with [his] ability to work, then the disability claim is denied." Id. Additionally, to be eligible for disability benefits, Plaintiff must demonstrate that his disability existed **prior** to the expiration of his insured status on June 30, 2020. Cruz-Rivera v. Sec'y of Health and Human Servs., 818 F.2d 96, 97 (D.P.R. June 3, 1986). Generally, ALJs must give controlling weight to a medical treating source's opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1521; 404.1527(c)(2). An ALJ cannot use a claimant's account of the symptoms, diagnosis, or medical opinion to establish the existence of an impairment. Id.

The ALJ's step two determination was supported by substantial evidence. The ALJ described Plaintiff's testimony during the hearing. Tr. 187-88, 202-19. Plaintiff injured his back and neck while carrying out excavation work. Id. He was treated at the State Insurance Fund with acupuncture, laser therapy, and injections, although the latter did not relieve his pain. Id. He stated that on a scale of 1-10, his pain was at level 10. Id. The ALJ also noted that Plaintiff took medications for his neck and back pain, which made him drowsy, dizzy, and fatigued. Plaintiff testified that he had been hospitalized for about a week, but he did not recall the date. Tr. 188, 206-07. Plaintiff also testified that he could stand for two (2) minutes, walk about one (1) minute, and sit for three (3). Plaintiff stated that he has depression, anxiety, and loss of memory due to the intensity of the pain and that the pain affects his ability to concentrate and complete tasks. He receives mental treatment every fifteen (15) days. Tr. 188, 207-08. Plaintiff also testified that he does not socialize with anyone and does not attend church or shop with his wife. He stopped driving in 2019 because the medications made him drowsy. Plaintiff also testified that his wife and son take care of the house chores, remind him to take his medications, and help him bathe. Id.

After considering the record in its entirety, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the objective evidence[,] the location, duration, frequency, and intensity of pain

[...], the type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken to alleviate his pain." Tr. 188. The ALJ considered the treatment notes of the State Insurance Fund from 2016-2017, which indicated that Plaintiff was treated for cervical strain, bilateral shoulder strain, bilateral carpal tunnel syndrome ("CTS"), radiculopathy at C7 and S1, and herniated nucleus pulposus at C5-C6. Tr. 188, 802, 813-816, 818-821, 823, 826, 832. The ALJ noted that Plaintiff had an MRI scan of the lumbar spine performed on December 30, 2016, which showed L5-S1 disc degeneration and spondylosis, moderate lateral recess stenosis, but no central spinal canal stenosis. Tr. 188, 839. An MRI scan of the neck was also performed and revealed spondylosis of the cervical spine and small posterior central herniation of the C5-C6 discs, but no evidence of significant central spine canal or neural foramina stenosis. Tr. 188, 838. The ALJ also considered Plaintiff's medical records from Dr. Gilberto Ruiz Deya ("Ruiz-Deya") for 2018 through 2021, which showed that he walked regularly, had no back and joint pain, had no joint swelling, and no depression or sleep disturbances. Tr.188, 879-81, 885-86, 889-890, 893-94, 897-98, 901-903. Plaintiff denied having myalgia or arthralgia. His head and neck were symmetric with no swelling or tenderness. Id. Plaintiff had an antalgic gait but experienced no pain. Id. A chest x-ray on September 15, 2020, revealed that Plaintiff's heart and pulmonary vasculature had a normal appearance, and the lungs were clear. Tr. 954.

The ALJ noted that Plaintiff was in the obese range due to his height and body mass index. Tr. 189. On May 2, 2019, Plaintiff underwent a cervical spine MRI without contrast. Tr. 867-68. The results showed minimal posterior disc bulge without canal stenosis and facet and uncovertebral hypertrophy with mild bilateral foramina narrowing at C3-C4. Id. At C4-C5, there was 1 mm posterior central disc herniation with uncovertebral hypertrophy, but no canal stenosis and only minimal bilateral foramina narrowing. Id. The ALJ noted that Plaintiff reported reduced pain with physical therapy, massage, and other measures. Tr. 189, 862-878, 907-15. Dr. Wilfredo Pérez-Vargas ("Pérez-Vargas") diagnosed Plaintiff with hypothyroidism, cervicalgia, low back and right shoulder pain, and inflammatory polyarthropathy, for which he was given medications. Tr. 189, 1065-1079. Plaintiff was alert and calmed. And his neck was flexible with full range of motion. Pérez-Vargas noted that "no adenopathy [was] present in the neck." Tr. 1069. The ALJ also considered test results of Plaintiff's right shoulder on October 8, 2019. Tr. 189. There was no evidence of fractures or dislocations, but the results showed that Plaintiff had calcific tendinitis. Tr. 866. An x-ray of Plaintiff's cervical spine on October 16, 2019, showed spondylosis with

decreased height of C6, narrow disc spaces at C4-C-5, C5-C6, and right-side torticollis. Tr. 916. An x-ray of the thoracic spine performed on the same day showed diffusely narrow disc spaces with mild scoliosis and spondylosis, while an x-ray of the lumbar spine showed narrow disc spaces at thoracolumbar level and at L1-L2, L2-L3, and L5-S1. Tr. 917-18. Plaintiff had narrow and sclerotic posterior articular facets from L3 down with narrow neural foramen mostly at L5-S1. Tr. 918. On October 26, 2020, after Plaintiff's last insured date, Plaintiff underwent a right shoulder MRI without contrast. Tr. 1028. The results indicated a mild acromioclavicular (AC) joint degenerative change, and he was diagnosed with right shoulder cuff tendinitis. Id.

Progress notes from February 2020 show that Plaintiff had normal neck, chest, back, spine, ribs, pelvis, abdomen, and upper and lower extremities, as well as normal neurological, lymphatic, and psychiatric functions. Tr. 999-1000. He had full range of motion of all extremities, 5/5 strength throughout, normal gait and station, and smooth gait and upright posture. Id. Plaintiff's judgment, insight, and cognitive functions were normal. And his mood and affect were appropriate. Treatment notes from Dr. Juan Rodríguez-Rivera ("Rodríguez-Rivera") from July 2020 demonstrate that Plaintiff was being treated for rheumatoid arthritis without rheumatoid factor, unspecified site. Tr. 956. He was very well after treatment and able to perform his usual activities of daily living. Id. Rodríguez-Rivera noted that he had improved neck, knee, ankle, hand, wrist, and elbow pain, as well as improved stiffness and swelling. Plaintiff denied back pain, muscle weakness, myalgias, and bone pain. Id. Overall, Plaintiff was alert and oriented, in no acute distress, well developed, and well nourished. Id.

The ALJ also considered the consultative examiner's medical evaluation in August 2020, after Plaintiff's last insured date. Tr. 189, 1015-1027. Plaintiff had a normal gait with 5/5 strength in the upper and lower extremities which were free from deformities, redness, swelling, ulcers, tenderness, edema, or amputations. Cranial nerves II through XII were normal. Id. The muscle tone and bulk were normal and there was normal sensation in the upper and lower extremities. Plaintiff had 5/5 strength in both hands with no pain, tenderness, swelling, nodes, changes in temperature, contractures, sensory changes, deformity, atrophy, or tremors. Id. And the tests for CTS were negative bilaterally. The ALJ also considered x-rays of the cervical spine which showed mild cervical spondylosis with mild narrowing of the C5-C6 and C6-C7 disc spaces. There was mild degenerative disc disease at L2-L3 and L5-S1 levels with mild narrowing of the disc spaces, mild levoscoliosis and mild degenerative changes in the facet joints and sacroiliac joints. Id.

The ALJ credited the SSA medical consultants Dr. José González-Méndez and Dr. Vicente Sánchez who reviewed Plaintiff's records, initially and on reconsideration, respectively. They found that Plaintiff had normal gait, full strength in all extremities, no joint instability, atrophies, or deformities, and the Tinel and Phalen tests for CTS were negative. Overall, the evidence showed that Plaintiff's physical impairments caused no more than minimal function limitations and were non-severe. Tr. 483-497, 499-511.

The four areas of mental functioning (i.e., (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself) are known as the "Paragraph B" criteria. The ALJ uses the following ratings to describe the degree of functional limitation in each of the areas: none, mild, moderate, marked, and extreme. 20 C.F.R § 416.920a(c)(4). To meet the "Paragraph B" criteria, a claimant must have an extreme limitation, or two marked limitations, in any of the four areas of mental functioning. See 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ considered the "Paragraph B" criteria and determined that Plaintiff had no limitations in (1) understanding, remembering, or applying information, (2) interacting with others, and (3) concentrating, persisting, or maintaining pace. Tr. 191. The ALJ noted that Plaintiff had a mild limitation in adapting or managing himself. Id. The ALJ concluded that the "Paragraph B" criteria were not met because Plaintiff's mental impairments did not result in at least one extreme or two marked limitations in a broad area of functioning. Tr. 186, 190-191. In reaching her determination, the ALJ considered the medical records in detail when determining that Plaintiff's depression was non-severe. The ALJ examined medical notes from Ruiz-Deya (tr. 879-906), INSPIRA (tr. 355-382), Dr. Pablo Cruz-López ("Cruz-López"), Dr. Lesvia Martínez-Alavarado ("Martínez-Alvarado") (tr. 1006-1011), and Pérez-Vargas (tr. 409-423). The ALJ considered the medical records from November 2019 through January 2020 from INSPIRA clinic. Tr. 190, 355-382. Plaintiff was treated with medications to treat and stabilize his anxiety. Although he reported feeling sad, lonely, anxious, worried, uneased, and suffering from insomnia, he denied suicidal or homicidal ideations. Tr. 355-56. Plaintiff's motor activity was adequate, he was cooperative, organized, oriented as to time, place, and situation, his judgment and insight were adequate, and his thought process was relevant, coherent, and logical. Tr. 361. Plaintiff suffered no panic or psychosis episodes. Id. The ALJ also referenced the findings in the mental health status examination performed on July 13, 2020, by psychologist and SSA consultative examiner Martínez-Alvarado. Tr. 190, 1006-1011. Martínez-Alvarado noted that Plaintiff was aware and

followed the conversation properly. Id. Martínez-Alvarado also noted that, while his mood was depressive and his affect congruent with mood, Plaintiff showed a relevant, logical, and coherent speech, and his attention and concentration appeared adequate. He was able to participate in day-to-day activities with the help of his wife. Id.

During examinations with general practitioner Cruz-López, Plaintiff was alert and oriented, his judgment, insight, and cognitive functions were normal, he denied suicidal or homicidal ideations, and denied suffering from sleep disturbances, anger, or sadness. Tr. 383-389, 409-423, 879-906. He was able to sustain conversations properly and his speech was normal and spontaneous. Tr. 191, 1006-1011. And although Plaintiff was treated for an adjustment disorder with mixed anxiety and depressed mood, Plaintiff's thought process was relevant, coherent, and logical. Tt. 355-382. His immediate and remote memory were normal, and he was oriented to person, time, and place. Additionally, the ALJ found persuasive the Paragraph B criteria assessments by SSA psychologist consultants Dr. Jennifer Cortés and Dr. Annette De Paz-Ortiz because they were consistent and supported by the medical evidence in the record. Tr. 191, 483-497, 499-511. After evaluating the evidence, Dr. Cortés concluded that Plaintiff had no limitations in understanding, remembering, or applying information, no limitation in interacting with others, no limitation in concentrating, persisting, or maintaining pace, and a mild limitation in adapting or managing himself. Tr. 495-96. On reconsideration, Dr. De Paz-Ortiz agreed.  Tr. 508.

Plaintiff requests that the Court reconsider the evidence before the ALJ. See Docket No. 18 ("Plaintiff's medical records do show that he has been suffering from a severe combination of impairments;" "the medical records from INSPIRA Coamo [...] demonstrate a different scenario;" "The evidence reflects severe limitations in interacting with others;" "these medically determinable impairments should be considered severe.") But that is not the role of the Court at this juncture. The Court is not called to reweigh evidence already evaluated and extensively discussed by the ALJ. Olivera-Bahamundi v. Comm'r of Soc. Sec., 2021 WL 1177339 at, *6 (D.P.R. Mar. 29, 2021); Evangelista v. Sec'y of Health and Humans Servs., 826 F.2d 136, 144 (1st Cir. 1997). The ALJ's findings must be upheld if a reasonable mind, viewing the evidence in the record, could accept them as adequate to support her conclusion. Rodríguez v. Secretary, 647 F.2d 218, 222 (1st Cir. 1981). That is the case here. The ALJ had substantial evidence to support her conclusion that Plaintiff's impairments were non-severe.

## 2.  The Evidence of Plaintiff's Subjective Complaints

An ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p, 82 Fed. Reg. 49464 (Oct. 25, 2017). Moreover, SSR 16–3p provides that, in conducting that inquiry, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. An ALJ "will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16–3p, 82 Fed. Reg. at 49465.

Plaintiff perfunctorily argues that the ALJ discounted his testimony of subjective symptoms by failing to support her conclusion with examples and by not engaging in a "thorough discussion of the Avery factors." Docket No. 10 at p. 16. This argument is underdeveloped and could be deemed waived. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Nonetheless, the Court is satisfied that the ALJ did not merely disregard Plaintiff's complaints of symptoms. She considered those complaints but found them to be inconsistent with the objective medical evidence in the record. See Sacilowski v. Saul, 959 F.3d 431, 441 (1st Cir. 2020) (the ALJ may disregard claimant's allegations where there is direct evidence to rebut claimant's testimony and where claimant's credibility could be questioned). Tr. 187-188. The factors in Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 28-29 (1st Cir. 1986), are (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors; (3) type, dosage, effectiveness, and adverse side effects of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's daily activities. Avery, 797 F.2d at 29; see also 20 C.F.R. § 416.929(c)(3); SSR 16-3p. The ALJ was not required to explicitly cite the Avery factors, as long as the record as a whole shows that the ALJ considered them. Mason v. Kijakazi, 2023 WL 3158929 at *8 (D.Mass. Apr. 28, 2023). As amply discussed in the foregoing section, there is substantial evidence in the record to sustain the ALJ's conclusions, even after considering Plaintiff's complaints of the intensity, persistence, and the effects of pain.

11

## IV.    Conclusion

The ALJ evaluated the record as a whole and her decision is supported by substantial evidence in the administrative record using correct legal standards. After thoroughly and carefully reviewing the record, and there being no good cause to reverse or remand, the final decision of the Commissioner is **AFFIRMED**, and this action is dismissed.

Judgment is to be entered accordingly.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 26th day of September 2025.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge
